| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MONROE CIRCUIT COURT |
| | ) | |
| COUNTY OF MONROE | ) | CAUSE NO. 53C06-1905-PL-001125 |

MONROE COUNTY, INDIANA and
MONROE COUNTY PLAN COMMISSION
      Plaintiffs,

v.

WILLIAM J. HUFF, II, as Trustee of the
William J. Huff, II Revocable Trust
Declaration, Dated June 28 2011 and
NICOLE E. HUFF, as Trustee of the
Nicole E. Huff Revocable Trust Declaration,
dated June 28, 2011,
      Defendants

## ORDER ON MOTION TO ENFORCE SETTLEMENT AGREEMENT

On August 4, 2022, a hearing by Zoom video conference was held on Plaintiff's Motion to Enforce Settlement Agreement. The Plaintiffs, Monroe County Indiana and Monroe County Plan Commission (collectively, "the County") appeared by counsel, David Schilling, Lee Baker, and Casey Stansbury. Defendant William J. Huff appeared and by counsel, Chou-il Lee.

The Court finds and orders as follows:

A. County Requests for Relief

The County requests that the Court enforce the Settlement Agreement negotiated by the parties and ratified by the Monroe County Commissioners on October 14, 2021. Specifically, the County asserts that the Huffs have violated Conditions 7 and 13 of that version of the Settlement Agreement ("Agreement"), and have requested that the Court order specific performance of the Agreement, and enjoin any further land development on the Huff's property until the required permits are issued. In response, the Huffs claim that the terms of the settlement agreement reached by the parties are actually reflected in the handwritten and signed draft prepared by the mediator, and they do not agree with specific language in Condition 4, which also triggers the Huffs compliance with Condition 7. Because the release language references conditions to which Huff does not agree, the release has not been signed.

B. Condition 4

This Court has reviewed the Agreement before, when the County asked the Court to declare the date of effectiveness of the Agreement. The Court declared the effective date of the Agreement to be October 14, 2020, the date on which the County Commissioners ratified the agreement terms and that "the terms of the agreement are reflected in the Memorandum of Agreement." The Court notes that the handwritten agreement is titled "Memorandum of Agreement October 12, 2020." However, the Commissioners were presented a typed agreement drafted by Mr. Stansbury, and that is the agreement they ratified on October 14, 2020. The Court

has not vacated that order and it remains effective. Thus, the language of Condition 4 reads as follows:

> 4.  To determine the Urban Area of the Huffs' property, Chou-il Lee will produce a map of the "urban area" that complies with IC 36-7-4-1103, subject to County agreement. The accepted map will be used for purposes of future development.

Not only does the Court's order determine that the typed agreement controls, the subsequent action of the parties confirms it. Through counsel, the Huffs agreed to this language, which was developed from the handwritten agreement, and approved through email, before it was submitted to the County Commissioners for approval, in an email exchange dated October 14, 2020. In their brief, the Huffs state that they never agreed to the language presented in the typed agreement. It is difficult to reconcile that statement with the clear email from Mr. Lee that expresses "We are fine with the Word document", when Mr. Schilling attached the draft typed agreement with a request for approval of the same prior to the submission to the Commissioners. The Huffs present nothing else to dispute the email.

The dispute lies in the second portion of the condition. The Huffs assert that they should be able to "obtain a variance through Planning Director Jackie Nester Jelen." This assertion is contrary to the language of both the handwritten Mediated Agreement, which the Huffs assert controls, and the Memorandum of Agreement, as well as the applicable laws regarding variances. First, the handwritten agreement says "once the parties agree [to the urban area map], the Huffs will seek a variance *through communication with* the Assistant Director." That language does not mean that the Assistant Director will grant the variance. Even if the handwritten agreement applied, it would not suggest that the Assistant Director of Planning would grant the variance. It simply recognizes the reality that parties meet with the Planning Department to go over plans prior to submission to the BZA, to gather recommendation from the Department in an effort to facilitate plan or variance approval. The parties actually convened a meeting in April 2021 for that purpose.

Second, the interpretation asserted by the Huffs is contrary to the law applicable to variances. The Monroe County Zoning Ordinance sets out the procedures to be followed for a party to obtain a variance in Chapter 812-3. An interpretation of the Agreement which is contrary to law is generally disfavored; "statutes and the law otherwise existing become a part of every contract, and must be read into it." *Dollman v. Pauley*, 202 Ind. 387, 394 (1931). Therefore, after the map of the urban area is agreed upon, the Huffs must go through the variance application process as set out in the Monroe County Zoning Ordinance.

C. Condition 7

Condition 7 of the Agreement requires that "prior to the beginning of any residential, commercial, non-agricultural construction, the Huffs will seek the necessary permits." The County asserts that the Huffs have violated this provision by relocating/ modifying a road on the property which leads to residential sites on the Huff property without applying for the necessary applicable permits, which are argued to be an improvement location permit, a grading permit, and a variance from the land slope restrictions of the Zoning Ordinance. The Huffs assert that they have complied with the terms of Condition 7, because the roads built on the property were constructed for the purpose of performing logging activities on the property. The Huffs rely on the fact that logging is an allowed agricultural use for the AG/RR zoning of the property, but also

assert that the County cannot require the Huffs to obtain permits for the construction of logging roads outside the urban areas, because to do so would be a violation of I.C. §36-7-4-1103.

Section 1103 prevents enactment of an ordinance that would prevent or alienate the property owner's right to log the property outside urban areas.  The applicable zoning to the property is AG/RR.  The Ordinance allows for logging/forestry within the zone, with certain conditions.  One of those conditions is to require a property owner to have an approved site plan prior to the activity, and allows the use only on parcels five or more acres in size.  The County is not preventing logging on the property.  In fact, the County has agreed not to pursue any claims based on the Huffs' logging on the property.  Enforcement of the manner and location on which a logging road is built does not violate the Ordinance.

Under the Ordinance, the construction of a road requires an improvement location permit.  A road is a structure under the Ordinance.  Under 814-1, (A) A person shall obtain an improvement location permit prior to: (1) constructing, reconstructing, moving, enlarging, demolishing, or structurally altering any building or other structure.  An ILP is not required for "(4) structures which are used exclusively for agricultural production purposes, and which do not exceed the limitations stated in the definition for confined feeding operations in Chapter 802."  While the Court accepts that the roads on the Huff property, whether initially on the lot or otherwise improved by Huffs to access his timber, may be used for agricultural purposes, it is abundantly clear that the roads have a dual purpose, which is to facilitate access to residential sites on the property.  A grading permit is also required.

The County asserts that the road built on the property is in the ECO zone, and the land slope in the area exceeds 12%.  Therefore, the County argues, Huffs need a variance from the land slope restrictions.  This requirement was discussed with Mr. Huff at the April 9, 2021 meeting, at which time the plans were being reviewed. At that point, it appears that the road may not have been modified yet, but it is clear that after inspection this past spring, the road had been built.  It does not matter that the road may have been used for agricultural purposes, because that use will not be exclusive.  In April 2021, Mr. Huff was advised that he would need a variance, and he disagreed at that time.  As explained above, the Huffs were required to apply for a permit to construct the road, and because the road was built in ECO Zone Area 1, regardless of whether he was using the road for agricultural purposes, he requires a variance. The Huffs have violated the Agreement on that basis, but the Court will withhold any determination of damages at this time.

   D.  Condition 13:  Mutual Release

The Huffs have not agreed to sign the Mutual Release, because the form Release contains language reflected in the ratified and typed Memorandum of Agreement.  The Mutual Release does not need the verbatim language of the Agreement to be included as subparagraphs of Paragraph H.  The Court has herein confirmed that the mediated settlement agreement terms are those terms contained in the typewritten Memorandum of Agreement effective as of October 14, 2020.  The parties shall refer to the Agreement in the Mutual Release as "Memorandum of Agreement of October 14, 2020" and they shall understand it to mean the typed version ratified by the Commissioners in all future documents.

The Court will not require the parties to sign the Release at this time.  It appears that Condition 2 on the Agreement is not complete, and thus, the County cannot or has not performed

on the issuance of the Press Release as required by Paragraph 8.  Generally, releases are not signed until the parties perform their obligations under the settlement agreements, though that requirement is not explicit here.

The Court recognizes that this has been a long and arduous process for all involved.  The transcript of the April 2021 meeting revealed frustration, but it also revealed the willingness of both sides to compromise.  The Huffs should have the right to enjoy their property in the manner they wish without governmental interference, but not at the expense of the restrictions of public law that has been duly enacted.  The Court has not heard testimony from either side, nor has the Court been asked to review administrative action.  The Court has been asked to "finish this", so that the parties may proceed to resolution. The Court has taken time to review the issue carefully so as to assist in that endeavor.  However, judicial action to either grant a variance, or alleviate a party from the requirement to obtain a variance or permit as required by law, as the Court has determined herein, would be an extraordinary remedy that the Court does not have the authority to take.

The parties have not been ordered to return to mediation.  At this stage, it appears that Condition 2 may not be met, and Condition 4 has been met by the County to the extent that it has attempted to provide guidance to the Huffs on the elements of the site plan for which they cannot recommend approval.  Condition 11 requires that the parties will return to mediation to resolve any disputes arising from the application or enforcement of the Settlement Agreement or underlying facts, so the parties are free to revisit and continue to work through the Huffs' site plan to facilitate a resolution.

IT IS THEREFORE ORDERED as follows:

1. The effective terms of the Settlement Agreement between the parties are those contained in the typed document "Memorandum of Agreement" effective on October 14, 2020, and ratified by the Monroe County Board of Commissioners.

2. The Planning Director does not have authority to issue variances under the Monroe County Zoning Ordinance.  The parties must agree on an accepted urban area map to proceed with development under the terms of the Zoning Ordinance and other applicable law.  Unless something changes from the evidence presented to the Court, that requires the Huffs must proceed to obtain variances for uses not currently allowed under the current zoning of the property, through the variance process set out in the Ordinance.

3. The Huffs violated the terms of Condition 7 by building or modifying the road within the property which, used for timbering/logging, without a necessary permit.  The Huffs are required to either rebuild the road or obtain a variance to bring the road in compliance with applicable statutes.

4. The Huffs are enjoined from further building, development, modification of structures or other land disturbing activities on their property until required approvals are obtained.

SO ORDERED, this 5th day of November, 2022.

*Holly M. Harvey*

Holly M. Harvey, Judge
Monroe Circuit Court VI

Distribution:

Counsel of Record
File/RJO