UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM J. HUFF, II, as Trustee of the | ) | |
| William J. Huff, II, Revocable Trust | ) | |
| Declaration, Dated June 28, 2011, | ) | |
| NICOLE E. HUFF, as Trustee of the | ) | |
| Nicole E. Huff Revocable Trust | ) | |
| Declaration, Dated June 28, 2011, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00812-JPH-TAB |
| | ) | |
| MONROE COUNTY, | ) | |
| MONROE COUNTY PLAN COMMISSION, | ) | |
| MONROE COUNTY PLANNING | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**

In 2017, William and Nicole Huff bought about 250 acres of land on Lake Monroe, near Bloomington, Indiana. Their efforts to develop the property led to a series of disputes with Monroe County, its plan commission, and its planning department (collectively, "the County"). The Huffs filed this suit in April 2022, claiming that the County's actions and portions of its zoning code are unconstitutional. The County has filed a motion to dismiss. Dkt. [48]. For the reasons below, the Court **GRANTS** the motion as to the Huffs' federal claims.

**I.**
**Facts and Background**

Because the County has moved for dismissal under Rules 12(b)(1) and 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint

1

as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *see Pavlock v. Holcomb*, 35 F.4th 581, 585 (7th Cir. 2022).

### A. Land purchase and initial development

In 2017, the Huffs bought nearly 250 acres of property on Lake Monroe. Dkt. 45 at 6 (operative complaint).  They soon applied for a logging permit, but the County said their application "could not be approved" until easement issues were resolved.  *Id.* at 6–8.  They withdrew that application, and their second application was met with "delay tactics" and "excuses."  *Id.* at 12–13. The Huffs also had a gazebo, a pavilion, and a shed on their property to be "used exclusively for agricultural purposes," and in September 2018 the County told them they needed "improvement location permit[s]" first, even though the County zoning ordinance didn't require those permits for agricultural structures.  *Id.* at 14–15.  By May 2019, the Huffs had begun logging the property and an Indiana Department of Environmental Management inspection "found no issues."  *Id.* at 16–19.

### B. State-court litigation

In May 2019, the County sued the Huffs in Indiana state court (the "Enforcement Suit"), alleging that the Huffs had violated zoning ordinances and building code provisions.  *Id.* at 16.  The Huffs filed counterclaims, including for violations of their substantive and procedural due process rights.  *Id.*; *see*

*Monroe Cnty., Ind., et al. v. William J. Huff et al.*, 53C06-1905-PL-001125

(Monroe Cnty. Cir. Ct. May 16, 2019).[1]

    In October 2020, the parties reached a Settlement Agreement.  Dkt. 45 at

23.  In relevant part, the County agreed to:

- Not take any action concerning past logging activities;
- Make a statement to the media that the Huffs did not harm Lake Monroe;
- Pay the Huffs $50,000; and
- Dismiss the lawsuit against the Huffs.

The Huffs agreed to:

- Seek all necessary permits before beginning any residential, commercial, or non-agricultural construction; and
- Dismiss their counterclaims.

And the parties jointly agreed to:

- Attempt mediation to resolve any disputes about the application or enforcement of the settlement or underlying facts; and
- Execute general releases covering all claims against each other.

Dkt. 46-26.  No final judgment has been entered in the County's Enforcement

Suit.  *See Monroe Cnty.*, 53C06-1905-PL-001125.

    In September 2021, the County filed a motion for the state court to rule

on the effective date of the Agreement.  Dkt. 48-3.  The judge resolved that

issue and ordered that "[a]ny issues concerning the compliance by either party

with the obligations set out in the agreement . . . shall be made by motion to

the Court."  Dkt. 48-4.  In March 2022, the County filed a motion for "judicial

authorization to enter upon the Huff Property" for a zoning inspection, which

---

[1] The Court takes judicial notice of the filings in state-court proceedings involving the parties.  *See Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016).

was granted.  Dkt. 48-5; dkt. 48-6.  Three months later, the County filed a

motion for the state court to enforce the Settlement Agreement, alleging that

the Huffs breached it by starting construction without the necessary permits

and by failing to execute a mutual general release.  Dkt. 48-7.  The judge found

that the Huffs violated the Agreement by building or modifying a road without a

necessary permit.  Dkt. 54-1.  The Huffs appealed that ruling, then voluntarily

dismissed their appeal.  *William J. Huff II Revocable Tr., et al. v. Monroe Cnty.,*

*Ind., et al.*, 22A-PL-02886 (Ind. Ct. App. Apr. 25, 2023).[2]

### C. Property development after settlement

After the parties executed their Settlement Agreement, the Huffs

continued trying to develop their property.  First, they started the permitting

process for a barn and gate in March 2021.  Dkt. 45 at 24.  The Huffs were

referred several times to different departments and, as of September 2022, had

not been allowed to proceed.  *Id.* at 24–29.

Next, the Huffs sought permits to build residences on their land.  *Id.* at

29–32.  The County "stopped" that application multiple times for alleged

deficiencies.  *Id.*  The Huffs were also told that their designs were not allowed

---

[2] The County filed the order to enforce and the notice of appeal as supplemental authority after the motion to dismiss was briefed, and later filed a third notice citing additional cases.  Dkt. 54; dkt. 56; dkt. 71.  The Huffs moved to strike the notices, arguing that they included briefs that "essentially amount[ ] to a surreply for which [the County] did not seek, or obtain, permission to file."  Dkts. [55], [57], [72].  A notice of supplemental authority should only contextualize the authority, without argument. *See Rossi v. Gurstel L. Firm, P.C.*, No. 19-CV-207-JDP, 2020 WL 2542834, at *1 n.1 (W.D. Wis. May 19, 2020).  Here, though, nothing in the County's notices affects the outcome of this order, so the Court **DENIES** the motions to strike without deciding whether any of the notices contained improper argument.

but were not provided with any relevant law or zoning code citations. *Id.* at 30. In April 2022, the Huffs had five different applications "stopped" either without explanation or for reasons that the Huffs allege were false. *Id.* at 33–34. The Huffs allege that Stephen Smith, a professional engineer with "substantial experience in planning and zoning" has, in his forty-year career, "never been involved with a property owner in Monroe County that has been treated the way the Huffs have been." *Id.* at 39–40.

### D. Procedural history

In April 2022, the Huffs brought this suit. Dkt. 1. They allege that the County's conduct violated the United States Constitution's Equal Protection Clause and substantive and procedural due process protections. Dkt. 45 at 42–51. They also contend that Zoning Ordinance Chapter 815—which sets forth the County's site plan review process—violates the United States and Indiana Constitutions, both on its face and as applied to them. Dkt. 45 at 51–55. The Huffs seek declaratory judgments and compensatory damages. *Id.* at 55–57.

The County has filed a motion to dismiss, arguing that the Court must abstain from deciding the merits of this case, or in the alternative, that the Huffs have failed to adequately plead any of their federal claims. Dkt. 49. The Court held a hearing on the motion on June 6, 2023. Dkts. 74, 75.

## II.
## Applicable Law

Defendants may move under Federal Rule of Civil Procedure 12(b)(1) to dismiss claims for lack of subject-matter jurisdiction[3] and under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

For both 12(b)(1) and 12(b)(6) motions, the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616; *Pavlock*, 35 F.4th at 585.

## III.
## Analysis

### A. Abstention

Federal courts have a "virtually unflagging" obligation to hear and decide cases within their jurisdiction.  *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).  But under "established abstention doctrines," a federal court must "decline to exercise its jurisdiction where doing so would intrude upon the

---

[3] "A motion to dismiss on abstention grounds fits best under Federal Rule of Civil Procedure 12(b)(1)."  *Nicole K. v. Stigdon*, No. 1:19-cv-1521-JPH-MJD, 2020 WL 1042619, at *2 (S.D. Ind. Mar. 3, 2020), *aff'd,* 990 F.3d 534 (7th Cir. 2021).

independence of the state courts and their ability to resolve the cases before them." *SKS & Assocs. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010).

The County argues that the Court should abstain from exercising its jurisdiction over this case under three of these doctrines—*Younger*, *Colorado River*, and what it calls "all-things-considered" abstention—because of its state-court Enforcement Suit. Dkt. 49 at 14–26. The Huffs respond that none of those doctrines apply here. Dkt. 51 at 10–21.

These abstention doctrines all share a core prerequisite—they do not apply unless there's a "pending" state-court suit. The *Younger* abstention doctrine "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with *pending* state court proceedings." *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021) (emphasis added). The *Colorado River* abstention doctrine applies when a federal court should defer "to *parallel* state proceedings in exceptional circumstances where abstention would promote 'wise judicial administration.'" *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 526 (7th Cir. 2021) (emphasis added). And the Seventh Circuit has applied abstention outside those doctrines based on "equity, comity, and federalism principles," when "the same dispute . . . remain[ed] pending on the state court's docket." *J.B. v. Woodard*, 997 F.3d 714, 721–22 (7th Cir. 2021); *cf. Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602–03 (1975) ("[T]he

relevant principles of equity, comity, and federalism have little force in the absence of a pending state proceeding.").

As the party seeking abstention, the County bears the burden of showing this common requirement of a pending state suit.  *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497 (7th Cir. 2011).  While the parties agree that settlement-related issues can still be litigated in the Enforcement Proceeding, *see* dkt. 51 at 12, the County cites no Supreme Court or Seventh Circuit precedent to show that the Enforcement Suit is "pending" in a context and sense that demands abstention, *see* dkt. 49 at 14–26.  Instead, the County cites cases where the pending litigation's nature, scope, and magnitude implicated equity, comity, and federalism concerns far more than the limited retained jurisdiction to enforce a settlement agreement does here.  *See, e.g.*, *Younger v. Harris*, 401 U.S. 37, 38–39 (1971) (pending state-court criminal indictment); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 805–06 (1976) (pending application for determination of water rights in state court); *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1016–17, 1023 (7th Cir. 2014) (pending state-court civil case with certain claims set for trial); *Valcq*, 16 F.4th at 517 (pending state-court review of administrative permitting decision); *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 644 (7th Cir. 2021) (pending motions in an ongoing state-court foreclosure proceeding); *J.B.*, 997 F.3d at 718–19 (pending appeal on parenting-time issue); *Ashley W. v. Holcomb*, 34 F.4th 588, 590 (7th Cir. 2022) (pending child-welfare petition with live claims).

Moreover, there are no currently pending motions in the Enforcement Suit, and the mere threat of future proceedings is not enough to warrant abstention. *See Steffel v. Thompson*, 415 U.S. 452, 454, 472 (1974) (*Younger* does not prevent federal adjudication "when a state prosecution has been threatened, but is not pending"); *520 S. Mich. Ave. Assocs. Ltd. v. Devine*, 433 F.3d 961, 963 (7th Cir. 2006) (suggesting that prosecution must be "imminent" before federal court will abstain). Besides, any motions would involve enforcement of the Settlement Agreement's terms, which included, for example, mutual releases of claims but no agreement about liability or the merits of any of the Enforcement Suit's claims. *See* dkt. 46-26. So, there is no state-court declaration or final judgment that the Huffs could be seeking to evade with this case and little risk of interference even if new motions were to be filed in the Enforcement Suit. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 598 (1975) (abstention based on state-court judgment ordering closure of theater); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 4 (1987) (abstention based on state-court judgment for money damages).

In short, the County has not shown that the Enforcement Suit is "pending" in a context and sense that demands abstention. And without a pending case for this litigation to interfere with, the exercise of federal jurisdiction will not offend "the equity, comity, and federalism principles underlying" the abstention doctrines. *See J.B.*, 997 F.3d at 721. The "virtually

unflagging" obligation to hear and decide this case instead controls here.
*Sprint Comms.*, 571 U.S. at 77; *see Adkins*, 644 F.3d at 497.

### B. Merits arguments

#### 1. Equal protection claim

The Fourteenth Amendment's Equal Protection Clause prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of its laws." This includes "protect[ing] individuals against purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). This "class-of-one" equal protection claim "can be brought based on allegations of the irrational or malicious application of law enforcement powers." *Id.*

To state a class-of-one claim, the Huffs "must allege that [they were] treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* The County argues that the Huffs haven't plausibly alleged irrational treatment because regulating development and activities on Lake Monroe—"a crucial nature resource that provides drinking water to the City of Bloomington"—is a potential rational basis. Dkt. 49 at 28–29. The Huffs respond that the County's statements contradict that potential basis. Dkt. 51 at 24–25.

In a class-of-one claim, the County's actions receive "the presumption of rationality." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013). So, even at the motion-to-dismiss stage, "[a]ll it takes to defeat" the Huffs' claim

"is a *conceivable* rational basis for the difference in treatment."  *Id.* (affirming
dismissal of class-of-one claim because allegations in complaint suggested
rational reason for government action); *see FKFJ, Inc. v. Vill. of Worth*, 11 F.4th
574, 588 (7th Cir. 2021) ("Class-of-one claimants carry a heavy burden.").

    The Huffs' property is on "the shore of Lake Monroe," dkt. 45 at 6, which
they do not dispute is particularly significant to Monroe County and the area's
drinking water.  *See* dkt. 49 at 28–29; dkt. 51 at 24–25.  They nevertheless
argue that the County can't rely on that interest because of a 2020 statement
from the County's attorney that it has no proof that the Huffs have damaged
Lake Monroe.  Dkt. 51 at 24–25.  But the County's attorney said at the same
time that "Lake Monroe is a significant part of the Monroe County geography
and . . . has weight in the zoning process."  Dkt. 46-24.  The County doesn't
have to wait for damage to Lake Monroe before it can rationally act to protect it.
In fact, "the test for rationality does not ask whether the benign justification
was the *actual* justification."  *Kopp*, 725 F.3d at 686; *see Goodpaster v. City of
Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013) ("It is irrelevant whether the
reasons given actually motivated the legislature").  It's enough that it's
"*conceivable*," and the protection of Lake Monroe qualifies.  *See Kopp*, 725 F.3d
at 686.

    For the same reason, it would not support a class-of-one claim even if
the County misapplied its own zoning rules to protect Lake Monroe.  *River
Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166–67 (7th Cir. 1994)
("Failure to implement state law violates that state law, not the Constitution.");

11

*see CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014) ("[F]ederal courts, as we have explained time and again, are not zoning boards of appeal.").  It's the Huffs' burden to "overcome the presumption of rationality that applies to government classifications." *Kopp*, 725 F.3d at 686.  Their only attempt to do so has been foreclosed by the Seventh Circuit because it questions whether protecting Lake Monroe is the actual reason for the County's actions, rather than a *"conceivable"* reason.  *Id.* So their class-of-one equal protection claim cannot survive the County's motion to dismiss.

Finally, to the extent the Huffs argue personal animus against them, that does not allow this claim to proceed.  Instead, if there is "a rational basis for the challenged action, that will be the end of the matter—animus or no."  *Fares Pawn, LLC v. Ind. Dep't of Fin. Institutions*, 755 F.3d 839, 845 (7th Cir. 2014). Since protecting Lake Monroe is a conceivable rational basis, that is "the end of the matter."  *Id.*[4]

The Huffs' Equal Protection claim is therefore **DISMISSED**.

### 2. Procedural due process claim

The Fourteenth Amendment's Due Process Clause prohibits deprivations of property "without due process of law."  In zoning cases, "the procedures 'due' are minimal."  *River Park, Inc. v. City of Highland Park*, 23 F.3d 164 (7th Cir. 1994).  So, in the usual case, a "[f]ailure to implement state law violates that

---

[4] Because the Huffs have not plausibly alleged irrational treatment, the Court does not consider the similarly situated comparator element.

state law" and not the Due Process Clause, and "the remedy lies in state court." *Id.* at 166–67.

The County argues that the Huffs have not stated a procedural due process claim because their alleged state-law violations can be vindicated in state court, providing adequate process. Dkt. 49 at 29–31. The Huffs respond that the County repeatedly "stops" their applications instead of denying them, leaving them with no recourse. Dkt. 51 at 25–28.

Even if the Due Process Clause requires a process, such as judicial review, to contest adverse zoning decisions, the Huffs have not stated a claim because that process was available to them. *See River Park*, 23 F.3d at 167 ("[T]he only procedural rules at stake are those local law provides, and these rules must be vindicated in local courts."). The Board of Zoning Appeals hears appeals from "[a]ny order, requirement, decision, or determination made by an administrative official . . . under the zoning ordinance." Ind. Code § 36-7-4-918.1(1). This plain language covers the Huffs' situation: a "stoppage" is a "decision" or "determination made by an administrative official," regardless of its lack of finality. *See Chosen Consulting, LLC v. Town Council of Highland*, No. 2:20-CV-246-PPS-JEM, 2022 WL 3042228, at *6 (N.D. Ind. Aug. 1, 2022) (stating that the refusal to issue a zoning-approval letter "would constitute a 'determination'" under the statute).

The Huffs cite no contrary authority and have not alleged that they've tried to appeal to the BZA. *See* dkt. 51 at 25–28. The Court therefore does not accept the Huffs' unsupported legal conclusion that they have no state-process

recourse to combat their site plan "stoppages."  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  The Huffs have had available all the process that's due under the Fourteenth Amendment.  *See River Park, Inc.*, 23 F.3d at 164, 166–67; *John C. & Maureen G. Osborne Revocable Fam. Tr. V. Town of Long Beach*, No. 3:17-CV-227 JD, 2018 WL 1471903, at *8 (N.D. Ind. Mar. 26, 2018) (dismissing a procedural due process claim in Indiana zoning case as "the ability to seek review of the challenged decisions in state court supplies that process").[5]

The Huffs' procedural due process claim is therefore **DISMISSED**.

### 3.  Void-for-vagueness claim

A statute is unconstitutionally vague if it fails to give explicit standards to those who apply it.  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  So, a "statute must contain an explicit and ascertainable standard to prevent those charged with enforcing the statute's provisions from engaging in 'arbitrary and discriminatory' enforcement."  *Karlin v. Foust*, 188 F.3d 446, 459 (7th Cir. 1999).

The County argues that the Huffs' vagueness claim should be dismissed because Monroe County Zoning Ordinance Chapter 815 provides sufficient guidance to zoning administrators.   Dkt. 49 at 32.  The Huffs respond that

---

[5] The Court therefore does not address the County's arguments that the Huffs could turn to the Enforcement Suit to receive "adequate process."  *See* dkt. 49 at 31.

Chapter 815 impermissibly gives "unfettered discretion" on permit applications. Dkt. 51 at 25–26.[6]

Chapter 815 says that, before a landowner may receive a construction permit, a zoning administrator must approve a site plan.  Dkt. 46-40 at 1 (§ 815-2).  After a complete application is submitted for review,

> The Administrator shall consider and evaluate such application and associated site plan, and thereupon render a decision in writing, which decision shall consist of either:
>
> (1) [A]pproval of the site plan based upon the determination that the proposed plan complies with the general, design and performance standards set forth in this ordinance;
>
> (2) Disapproval of the site plan based upon the determination that the proposed project does not meet the general, design or performance standards set forth in this ordinance; or
>
> (3) Approval of the site plan subject to any conditions, modifications, and restrictions as required by the Administrator which will ensure that the project meets the general, design and performance standards set forth in this ordinance.

---

[6] The Huffs also alleged that Chapter 815 is "overbroad on its face," but they did not respond to the County's argument on that claim.  *See* dkt. 45 at 51.  They have therefore "abandoned the claim" and may no longer pursue it.  *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).  The Huffs also may have waived any response to the County's vagueness arguments because they rely on only Indiana state-court cases addressing whether a local ordinance satisfies the Indiana Zoning Enabling Act's specificity requirements in support of their federal claim.  *See* dkt. 51 at 26 (citing *Hendricks Cnty. Bd. of Comm'rs v. Rieth-Riley Constr. Co.*, 868 N.E.2d 844, 852–54 (Ind. Ct. App. 2007).  Generally, "arguments without discussion or citation to pertinent legal authority are waived," *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009), but for the sake of completeness, the Court addresses this claim's merits.

*Id.* at 6 (§ 815-3(C)).  Chapter 815 requires zoning administrators to consider certain standards before approval, including traffic impact, compatibility with surrounding land uses, and availability of sewer, water, and other utility services.  *Id.* at 6–7 (§ 815-4).

A statute is unconstitutionally vague only if its implementors have "uncabined discretion."  *L C & S, Inc. v. Warren Cnty. Area Plan Comm'n*, 244 F.3d 601, 605 (7th Cir. 2001); *Grayned*, 408 U.S. at 108–09; *Karlin*, 188 F.3d at 448.  Here, Chapter 815 allows the County's zoning administrators discretion by, for example, allowing them to consider broad standards and impose certain conditions or restrictions before approving a site plan.  Dkt. 46-40 at 6 (§ 815-3(B)(3)).  But this discretion is not unlimited because a decision must be made based on standards enumerated in Chapter 815 and elsewhere in the zoning ordinance.  *See id.* at 6–7 (§ 815-4); dkt. 49 at 32.  In other words, Chapter 815 does not allow zoning administrators to approve or deny site plan applications for any arbitrary reason.  *See Karlin*, 188 F.3d at 448.[7] Instead, they must apply explicit standards.  *See* dkt. 46-40 at 6–7; *Grayned*, 408 U.S. at 108–09.  That avoids any vagueness problem under the United States Constitution, *see id.*, and the Huffs cite no contrary case.

The Huffs' void for vagueness claim is therefore **DISMISSED**.

---

[7] The Huffs allege that Chapter 815-3 gives zoning administrators "unfettered discretion to deny a permit application and unbounded authority to condition the permit on any additional terms he or she deems 'necessary and reasonable.'"  Dkt. 45 at 51–52.  They do not raise this argument in their brief, *see* dkt. 51 at 25–26, and the "necessary and reasonable" language does not appear to be used in Chapter 815-3.

### 4. Takings claim

"The Takings Clause of the Fifth Amendment . . . provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005).  Government regulation of private property can result in a "taking" when it "denies all economically beneficial or productive use of land." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992).  In other words, "the measure must place such onerous restrictions on land as to render it useless." *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 421 (7th Cir. 2010).

The County argues that the Huffs' takings claim should be dismissed because its actions have not foreclosed all economically beneficial development of the property.  Dkt. 49 at 35–37.  The Huffs respond that "the minimal progress [we] have made . . . still deprives [us] of *much* of the economically beneficial use of the property."  Dkt. 51 at 29 (emphasis added).

The Huffs' complaint alleges that the County's stoppages and denials of their site plan applications have deprived the Huffs of all economically beneficial or productive use of their land.  Dkt. 45 at 54–55.  But that legal conclusion "must be supported by factual allegations" for the claim to avoid dismissal.  *Nowlin v. Pritzker*, 34 F.4th 629, 634 (7th Cir. 2022) (holding that a similar takings-claim allegation was insufficient).  And the Huffs' complaint and brief admit the opposite.  Their complaint mentions "private logging operations" happening on their property.  Dkt. 45 at 16.  And their brief acknowledges that they have conducted "limited logging activity" and have had

17

septic permits approved.  Dkt. 51 at 29.  Those things are economically beneficial, so the Huffs have not met the "demanding test for alleging a regulatory taking."  *Nowlin*, 34 F.4th at 634; *see Muscarello*, 610 F.3d at 421–22 (Not "all zoning decisions that may diminish an owner's potential uses of her property, or compel a less valuable use, are takings.").

The Huffs' takings claim is therefore **DISMISSED**.[8]

### 5. Substantive due process claim

Substantive due process challenges involving only the deprivation of a property interest are cognizable when plaintiffs allege "either the inadequacy of state law remedies or an independent constitutional violation."  *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003).

The County argues the Huffs have not adequately pleaded either prerequisite, so this claim should be dismissed.  Dkt. 48 at 37–39.  The Huffs respond that they have adequately pleaded federal constitutional claims and that they cannot seek relief from the Board of Zoning Appeals.  Dkt. 51 at 30.

As explained above, the Huffs have not plausibly alleged any federal constitutional violation, including an equal protection claim, a potential procedural due process claim, or a takings claim.  Similarly, as explained above, Indiana Code § 36-7-4-918.1(1)'s plain language appears to allow the Huffs to seek review of the County's actions, and the Huffs have not cited any contrary authority or explained why they have not attempted that option.  *See*

---

[8] The Court therefore does not address the County's additional argument that the takings claim is not ripe.  *See* dkt. 49 at 33–35.

dkt. 51 at 25–28, 30.   The Huffs' substantive due process claim is therefore

**DISMISSED**.   *See Lee*, 330 F.3d at 467; *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) (affirming dismissal of substantive due process claim when plaintiff failed to state class-of-one claim and did not plead the inadequacy of state-law remedies).

### 6. State-law claims

The Huffs also bring Indiana-law claims alleging that Chapter 815 is overbroad and cannot be applied retroactively.   *See* dkt. 45 at 53–56.   The County argues that the Court should relinquish jurisdiction over these claims. Dkt. 49 at 39.   The Huffs respond that they cannot raise these claims in the Enforcement Suit, so they should continue here even if the federal claims are dismissed.   Dkt. 51 at 31.

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims."   *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479 (7th Cir. 2012); 28 U.S.C. § 1367(c).   "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law."   *RWJ Mgmt.*, 672 F.3d at 479.   The Seventh Circuit has identified three exceptions "that may displace the presumption":

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or

> (3) when it is absolutely clear how the pendent claims
> can be decided.

*Id.* at 480.

Here, the factors weigh in favor of the Court's relinquishing jurisdiction over the remaining state-law claims.  First, by bringing their state law claims in federal court under 28 U.S.C. § 1367(a), the Huffs tolled the statute of limitations on their state law claims.  *Artis v. District of Columbia*, 138 S.Ct. 594, 598 (2018) ("We hold that § 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, *i.e.*, to stop the clock."). Second, substantial judicial resources have not been spent on any of the state-law claims.  *RWJ*, 672 F.3d at 481 ("[C]oncerns about judicial economy have their greatest force when significant federal judicial resources have already been expended to decide the state claims.").  And most importantly, the Huffs do not dispute the County's assertion that the "state-law claims raise novel issues of state law, including a state constitutional question (Count 5), that are better left for the state courts to decide."  Dkt. 49 at 39; *see id.*  (When "the relevant state law is unsettled, the presumption in favor of relinquishment is particularly strong.").

Therefore, unless the Huffs amend their complaint to plausibly plead a federal claim, the Court will relinquish jurisdiction over their state law claims.

**IV.**
**Conclusion**

The County's motion to dismiss is **GRANTED** to the extent the Huffs' federal claims are dismissed.  Dkt. [48].  The Court also **DENIES** the Huffs' motions to strike.  Dkt. [55]; dkt. [57]; dkt. [72].

The Huffs shall have **through October 20, 2023** to file a motion to amend their complaint if they believe it would not be futile.  *See, e.g., Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).  If the Huffs do not seek leave to amend, the Court will relinquish jurisdiction over their state-law claims and enter final judgment.

**SO ORDERED.**

Date: 9/27/2023

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel